UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

KELVIN JENKINS,

                Plaintiff,           Civil Action No.: 15-12126
                                       Honorable George Caram Steeh
                v.                Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

                Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S APPEAL OF DENIAL OF SSI BENEFITS

Plaintiff Kelvin Jenkins appeals a final decision of Defendant

Commissioner of Social Security ("Commissioner") denying his application

for supplemental security income benefits ("SSI") under the Social Security

Act (the "Act").[1]  Jenkins, proceeding *pro se*, did not file a motion for

summary judgment, but did submit "additional information" and medical

records.  [R. 9; R. 17].  The Commissioner filed a motion for summary

judgment.  [R. 21].  The Court finds that the Administrative Law Judge

("ALJ") did not err in finding Jenkins not disabled, and

---

[1] This matter was referred to this Court for a Report and Recommendation
pursuant to 28 U.S.C. § 636(b)(1)(B).

thus **RECOMMENDS** that the Commissioner's motion **[R. 21]** be **GRANTED**.

## I.    BACKGROUND

### A.    Jenkins' Background and Disability Application

Jenkins was 43 years old on his alleged disability onset date of July 15, 2011. [R. 14-5, Tr. 201]. He worked as a truck driver and general laborer until about 2006 or 2008.  [R. 14-2, Tr. 48-49; R. 14-6, Tr. 226-27]. Jenkins' application alleged that he was disabled due diabetes mellitus, high blood pressure, lumbar spine disorder, stomach pain, right knee pain, traumatic brain injury, adjustment disorder, depression, and mental impairment.  [R. 14-6, Tr. 225].

Jenkins' initial application for SSI benefits was denied on July 14, 2011.  [R.14-3, Tr. 122-133]. His current application alleges disability beginning the next day, July 15, 2011.  [R. 14-2, Tr. 24].  After a January 28, 2014 hearing, his application was again denied in a written decision on April 4, 2014.  [*Id.*, Tr. 24-39, 44-64].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.,* Tr. 1-4]. Jenkins timely filed for judicial review. [R. 1].

### B.    The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful

2

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps.  First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[2] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.*  The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities."  § 920(c).

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994). [3]

Applying this framework, the ALJ concluded that Jenkins was not disabled. At the first step, he found that Jenkins had not engaged in substantial gainful activity since his application date. [R. 7-2, Tr. 26]. At the second step, he found that Jenkins had the severe impairments of diabetes mellitus, iron deficiency anemia, hypertension, major depressive disorder and cognitive disorder. [*Id.,* Tr. 26]. Next, the ALJ concluded that none of Jenkins' impairments, either alone or in combination, met or medically equaled the severity of the listed impairments.  [*Id.*, Tr. 26-28].

At the fourth step, the ALJ found that Jenkins had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 416.967(b) involving occasional balancing, stooping, kneeling, crouching, crawling and climbing ramps and stairs.  The claimant cannot operate foot or leg controls, and he can only occasionally reach overhead.  He is able to frequently, but not constantly use his hands for fine and gross manipulation.  He is unable to climb ladders, ropes or scaffolds and he must avoid all exposure to work at unprotected heights or near dangerous moving machinery.  The claimant is restricted to unskilled, simple, routine and repetitive work tasks with no fast-paced work or high production quotas.  Socially he can have only occasional interaction with supervisors, co-workers and the general public.

---

[3] Opinions analyzing applications for Disability Insurance Benefits are applicable because the same standards apply to SSI claims.  *See* 20 C.F.R. §§ 404.1520 and 416.920.

[*Id.,* Tr. 28-29].

The ALJ found that this RFC precluded Jenkins from performing his past relevant work as a truck driver or general laborer. [*Id.*, Tr. 38]. After considering Jenkins' age, education, work experience, RFC, and the testimony of the VE,[4] the ALJ found at step five that Jenkins could perform a significant number of other jobs in the national economy, including sorter, inspector and hand packager. [*Id.*, Tr. 39]. Thus, the ALJ found that Jenkins was not disabled.

## II.   ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the

---

[4] The VE's testimony addressing the availability of jobs for individuals with the above RFC is found at R. 14-2, Tr. 61-63.

evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723.  *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729.

Jenkins did not raise any specific arguments to challenge the ALJ's

6

determination that he was not disabled during the relevant time period. Instead, he reiterated his claims regarding his limitations and submitted some new medical records. [R. 9; R. 17]. However, because Jenkins is proceeding *pro se*, the Court has construed his filings liberally and in his favor. *Ford v. Comm'r of Soc. Sec.,* 143 F. Supp. 3d 714, 717 (S.D. Ohio 2015). Despite this liberal review, the Court finds that the Commissioner's motion for summary judgment should be granted because Jenkins has not sustained his burden of demonstrating that he meets a listing or that the ALJ's assessment of his RFC was insufficiently restrictive.

**B.**

The ALJ found Jenkins' claims regarding his impairments to be not fully credible. [R. 14-2, Tr. 30]. The Court agrees with the ALJ that the evidence in the record does not substantiate his claims of disabling symptoms and limitations. He alleged that his conditions caused him fatigue, dizziness, weakness, fogginess, drowsiness, sweating, rapid breathing, rapid heartbeat, memory loss, lack of concentration, a need to lay down and take frequent rest breaks, stomach problems, sleep disturbance, social isolation, headaches, poor grip, a popping knee, and limitations with respect to lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, seeing, memory, concentration,

7

completing tasks, understanding, following instructions, and getting along with others.  [R. 14-2, Tr. 50-53; R. 14-6, Tr. 212-18].  He testified that he uses a cane four to five times per week (although it was not prescribed by a doctor), and he appeared for an independent medical examination using a cane and limping.  [R. 14-2, Tr. 54; R. 14-7, Tr. 282].  Jenkins' function report and a third-party function report that was submitted on his behalf portrayed Jenkins as being dependent on his sister, with whom he lived, for food preparation, household chores, driving, shopping, and reminding him to perform activities of personal care.  [R. 14-6, Tr. 212-19, 234-39].

Yet, by the time of the hearing, Jenkins' sister had moved out and he was living by himself, preparing his own meals, doing laundry, going shopping, driving to the store and to medical appointments, and taking care of his own personal needs.  [R. 14-2, Tr. 48, 57-59].  Jenkins testified to still being very limited, [*id.*], but a bigger problem for him is that the medical reports do not support his claims of disabling symptoms.

Records from May to August 2011 show that Jenkins was diagnosed with internal hemorrhoids, iron deficiency anemia, diverticulosis of the colon and gastritis.  [R. 14-7, Tr. 257-70].  He was prescribed antibiotics, advised to incorporate a high fiber diet and urged to quit smoking (which he never did).  [*Id.*, Tr. 257-58].  No evidence of functional limitations emerges from

8

these records.

Jenkins' next appointment was his first with treating physician Yari Campbell, M.D., on May 22, 2012, when he reported having a problem controlling his diabetes and requested a letter to support his disability claim.  [*Id.*, Tr. 278-80].  But his "Problem List" stated, "Nothing to Report," his examination findings were all normal (including his gait), and his glucose levels were not recorded. [*Id.*].  He denied chest pains, shortness of breath, lightheadedness or dizziness.  [*Id.*].

Jenkins next saw Dr. Campbell on June 19, 2012.  [*Id.*, Tr. 274-77]. During that visit, he registered no new complaints and has examination was again entirely normal.  [*Id.*].  When Jenkins returned to Dr. Campbell on November 9, 2012, again requesting a letter to support his disability claim, he was cooperative, well groomed, not in acute distress or sickly, well nourished, had normal posture and gait, and his chest and lung, cardiovascular, abdominal, neurologic and musculoskeletal examinations were normal.  [*Id.*, Tr. 272-73].  His blood pressure was elevated because he had been out of medication for a week.  [*Id.*, Tr. 272].  Jenkins was diagnosed with uncontrolled diabetes, but his glucose levels were once again not recorded.  [*Id.*].

Jenkins did not again see Dr. Campbell until May 28, 2013.  She

9

noted that, during this visit, Jenkins' blood pressure was again elevated, but he had no major complaints; was well groomed, in no acute distress and well nourished; had normal chest and lung, cardiovascular, and abdominal examinations; and had normal posture, gait, strength, tone and otherwise normal neurologic and musculoskeletal examinations.  [*Id.,* Tr. 294-95].  His diagnosis of uncontrolled diabetes was not accompanied with a description of his glucose levels.  [*Id.*].

At Jenkins' next appointment with Dr. Campbell, in October 2013, his examinations were normal, including those of his musculoskeletal and cardiac systems.  [*Id.*, Tr. 291-93].  His blood pressure was high, but Dr. Campbell noted that he was not taking Doxazosin (a blood pressure medication) due to the cost. [*Id.*].  After she emphasized the importance of Jenkins complying with his medications, she indicated that he would start taking that medication.  [*Id.*, Tr. 292].  Dr. Campbell reported that Jenkins was not sure what his blood sugars were, but that he had nonetheless reduced his intake of Novolin (insulin). [*Id.*].  This was Jenkins' last appointment with Dr. Campbell prior to the January 28, 2014 hearing.

The only record concerning Jenkins' alleged mental disability is from Atul Shah, M.D., an independent psychiatric examiner, who examined Jenkins in April 2013.  [R. 14-7, Tr. 282-84].  This is the examination at

10

which Jenkins arrived limping and using a cane.  [*Id.,* Tr. 282].  Jenkins

reported that he was not sure whether he had seen a psychiatrist or

psychologist previously, but he was never psychiatrically hospitalized.  [*Id*.].

Dr. Shah diagnosed Jenkins with major depressive disorder, recurrent with

psychotic features, but in partial remission.  He issued a Global

Assessment of Functioning ("GAF") score of 59, which suggests moderate

impairment,[5] and opined that Jenkins' prognosis was fair.

This medical evidence does not support Jenkins' claims of disabling

symptoms and, as described more fully below, it provides substantial

evidence for the ALJ's determinations.

## C.

The ALJ considered whether Jenkins met Listings 1.04

(musculoskeletal disorders), 4.00H (hypertension), 9.00B (diabetes), 12.02

(organic mental disorder) and 12.04 (affective disorders).  [R. 14-2, Tr. 26-

28].  With respect to Listing 1.04, the ALJ accurately determined that the

record did not demonstrate that Jenkins had imaging studies revealing a

---

[5] "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning." *Norris v. Comm'r of Soc. Sec.*, No. 11–5424, 461 Fed. Appx. 433, 436 n. 1 (6th Cir.2012) (citations omitted).

disorder of the spine, nor clinical findings such as diminished strength, sensation deficits, or an inability to ambulate effectively.  [*Id.*, Tr. 26-27]. The ALJ noted that the record did not demonstrate that Jenkins' use of a cane was medically necessary.  [*Id.,* Tr. 27].

Listings 4.00H and 9.00B, pertaining to hypertension and diabetes respectively, require consideration of the effect those conditions have on body systems.  The ALJ opined that Jenkins' hypertension and diabetes may have affected his functioning, but that the RFC could accommodate any limitations and that the effects were not of the severity to necessary to meet a listing.  [*Id.*].

Turning to Jenkins' mental impairments, the ALJ found that Jenkins had not demonstrated marked impairments or repeated episodes of decompensation, which are necessary in order to meet Listings 12.02 or 12.04.  [*Id,* Tr. 27-28].

All of these findings are supported by the evidence outlined in the preceding section.  However, the Court notes that the ALJ did not obtain a state agency medical opinion; a state agency single decision maker (SDM) had initially determined that Jenkins' conditions did not meet or equal a listing. [R. 14-2, Tr. 37; R. 14-3, Tr. 110-17].  The ALJ noted that the SDM was not entitled to any particular deference.  [R. 14-2, Tr. 27].  However,

12

she failed to follow SSR 96–6p, which "requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996). Most courts in this district agree that, when a SDM renders the initial denial, a medical opinion on the issue of equivalency is necessary at the administrative hearing stage. *See, e.g., Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *4 (E.D. Mich. Sept. 25, 2013) ("[O]nce a hearing is requested, SSR 96–6p is applicable, and requires a medical opinion on the issue of equivalence.").

This type of error is usually not harmless. "[C]ourts generally should exercise caution in conducting harmless error review in this context" because "it may be difficult, or even impossible, to assess . . ." *Rabbers,* 582 F.3d at 657-58. *See also Harris v. Comm'r of Soc. Sec.*, No. 12-10387, 2013 WL 1192301, at *8 (E.D. Mich. Mar. 22, 2013) (court lacked medical expertise to determine whether impairments met equivalency requirement). But failure to obtain a medical opinion on the question of whether a claimant meets a listing constitutes harmless error when the evidence overwhelmingly demonstrates that the claimant could

13

not meet the elements of a given listing. *See e.g. Bukowski v. Comm'r of Soc. Sec.*, No. 13-CV-12040, 2014 WL 4823861 (E.D. Mich. Sept. 26, 2014) ("While the failure to obtain an expert opinion on the issue of medical equivalence will often require remand . . . the administrative record in this case is neither inconclusive nor contradictory, and by all indications, remand for further medical opinion would yield the same conclusions already reached by the ALJ.") (citation omitted).

In this case, the lack of a medical opinion was harmless. The record demonstrates unequivocally that, from July 15, 2011 until the April 4, 2014 hearing decision, Jenkins had not been diagnosed with a spinal disorder, his clinical findings were generally normal, there was little if any evidence that his hypertension and diabetes were affecting his body systems, and there was no evidence of marked mental impairments or episodes of decompensation. There is overwhelming evidence to support the ALJ's finding that Jenkins did not meet a listing and remand would yield the same conclusion.

**D.**

The next question is whether there was substantial evidence to support the ALJ's assessment of Jenkins' RFC – an assessment that was impacted by the prior decision. If a final decision of the Commissioner "on

14

a prior disability claim contains a finding of a claimant's residual functional

capacity, [the Commissioner] may not make a different finding in

adjudicating a subsequent disability claim with an unadjudicated period …

unless new and additional evidence or changed circumstances provide a

basis for a different finding of the claimant's residual functional capacity."

See Acquiescence Ruling 98-4(6), 1998 WL 283902, at *3 (June 1, 1998);

*see also Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842-43 (6th Cir.

1997) (citations omitted) ("When the Commissioner has made a final

decision concerning a claimant's entitlement to benefits, the Commissioner

is bound by th[at] determination [when adjudicating a subsequent claim]

absent changed circumstances.").

The ALJ here found the prior RFC assessment to be "extraordinarily

restrictive and [ ] considerably deferential to the claimant's subjective

complaints in light of the minimal evidentiary findings."[6]  [R. 14-2, Tr. 30].

Nonetheless, the ALJ considered herself bound by the prior RFC absent a

---

[6] The previously assessed RFC indicated that Jenkins could perform light work with a sit/stand option; that he could not operate foot controls, climb ladders, ropes or scaffolds; that he could occasionally stoop, crouch, kneel, crawl, climb, or reach overhead; that he was limited to occasional gross and frequent fine manipulation; that he must avoid exposure to hazards; that he was limited to occupations that do not require complex communication; and that he was limited to a specific vocational preparation (SVP) of one or two.  [R. 14-3, Tr. 127].  An SVP one or two corresponds to unskilled work.  SSR 00–04p, 2000 WL 1898704.

finding of new and material evidence.  [*Id.*, Tr. 31].  She determined that

new evidence demonstrated that Jenkins had normal examination findings;

voiced no complaints that would support limitations in his ability to stand,

walk or use his hands and feet; and had denied any chest pains, shortness

of breath, light-headedness or dizziness.  [*Id.*].  Deeming this new evidence

material, the ALJ removed from Jenkins' assessed RFC the previously

imposed limitations to a sit/stand option and less than frequent handling

and fingering.  [*Id.*].  Taking into consideration Dr. Shah's opinion regarding

Jenkins' mental impairments, the ALJ added pace and social restrictions to

the previously assessed RFC.  [*Id.*].  The Court finds no error with this

reasoning and that it accurately reflects the record.

More fundamentally, Jenkins bears the burden of proving that he

requires a more restrictive RFC. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388,

391 (6th Cir. 1999); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th

Cir. 2008).  He has not done so.

**E.**

Jenkins submitted evidence to the appeals counsel after the hearing

and to this Court after he filed his complaint.  [R. 9, PgID 39; R. 14-2, Tr. 7-

17; R. 14-7, Tr. 296-331; R. 17, PgID 395-405].  This new evidence cannot

be considered here, but the Court has the authority to remand for

16

consideration of the new evidence pursuant to 42 U.S.C. § 405(g) if good

cause and materiality are shown. *Cotton v. Sullivan*, 2 F.3d 692, 695-96

(6th Cir. 1993); *Snider v. Comm'r of Soc. Sec.*, 328 F. Supp. 2d 703, 709-

11 (E.D. Mich. 2004). The good cause requirement is met with evidence

that the claimant could not obtain the evidence prior to the hearing, and the

Sixth Circuit takes a hard line with this requirement. *Cotton*, 2 F.3d at 695-

96 (reversing district court's consideration of new evidence when claimant

failed to address good cause); *Oliver v. Sec'y of Health & Human Servs.*,

804 F.2d 964, 966 (6th Cir. 1986) (upholding denial of remand for

consideration of new evidence when claimant did not show good cause).

For materiality, the evidence must relate "to the period on or before the

date of the administrative law judge decision." 20 C.F.R. § 404.970(b).

"[E]vidence of a subsequent deterioration or change in condition after the

administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health &*

*Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). New evidence is

"'material' only if there is a reasonable probability that the Secretary would

have reached a different disposition of the disability claim if presented the

new evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2002) (citing

*Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir.

1988)).

17

Here, Jenkins has not addressed good cause, so the Court has no authority to order remand for consideration of his new evidence.  *Cotton*, 2 F.3d at 695-96. Even if he had good cause, the new evidence is not material because there is no reasonable probability that the ALJ would have reached a different disposition regarding Jenkins' functionality during the relevant period; the records from the relevant period showed almost entirely normal examination findings.

There were new findings in June and July of 2014 – after the ALJ's decision – but nothing supporting total disability.  Specifically, in June 2014, testing at the Heart and Vascular Institute did render some new diagnoses, including severe asymmetric left ventricle hypertrophy and diabetic neuropathy.  [R. 14-7, Tr. 296, 330, 311].  But these diagnoses say nothing about their severity or impact on his ability to perform work activities. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988); *Kennedy v. Astrue*, 247 Fed. Appx. 761, 767 (6th Cir. 2007).  To that point, although Jenkins was found the following month to have leg pain with exertion and swelling, as well as numbness and tingling in his hands and feet, he was not fatigued, not tiring easily, showing no dizziness or fainting, had no abdominal pain, no anxiety, no depression, and a normal neurologic examination, including a normal gait.  [R. 10-7, Tr. 308-11].  To the extent that these finding from June and

18

July of 2014 represent that Jenkins' conditions worsened since the April 2014 decision, they are not relevant. *Wyatt*, 974 F.2d at 685.

Since Jenkins has not shown good cause and the new evidence is not material, a remand for consideration of his new evidence is not warranted.

## F.

A final question is whether the ALJ violated the "treating physician rule," which ordinarily requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and ... sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). Courts will not hesitate to remand when the ALJ failed to

articulate "good reasons" for not fully crediting the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004).

In this case, Dr. Campbell wrote a letter on Jenkins' behalf in May 2013 stating that his fluctuating sugars made it difficult for him to work. [R. 14-7, Tr. 286). The ALJ gave this opinion little weight, reasoning that an opinion that a claimant is totally disabled relates to an issue that is reserved for the Commissioner, that Dr. Campbell's opinion did not identify Jenkins' functional limitations, and that Dr. Campbell's treatment notes revealed normal examination findings except with respect to Jenkins' blood pressure and sugar readings. These are good reasons.

A finding of disability is an issued reserved for the Commissioner. *Kidd v. Comm'r of Soc. Sec.*, 283 Fed. Appx. 336, 340 (6th Cir. 2008). Further, Dr. Campell's letter was not an opinion to which controlling weight is required. "Under Social Security regulations, medical opinions are 'judgments about the nature and severity of ... impairment(s), including ... symptoms, diagnosis and prognosis, what [one] can still do despite impairment, and [an individual's] physical or mental restrictions.'" *Hall v. Comm'r of Soc. Sec.*, 148 Fed. Appx. 456, 462 (6th Cir. 2005) (citing § 404.1527(a)(2)). Finally, the ALJ correctly noted that Dr. Campbell's reports showed mostly normal examination findings. For these reasons,

the ALJ was not bound by Dr. Campbell's opinion.

## III.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the

Commissioner's motion **[R. 21]** be **GRANTED** and that judgment be

entered in her favor.

<u>s/Elizabeth A. Stafford</u>
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 29, 2016

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.   *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.*

*Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but

fail to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 29, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
